[D.I. 54]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| PETER REILLY,<br><br>        Plaintiff,<br><br>  v.<br><br>THE HOME DEPOT USA, INC., et al.,<br><br>        Defendants. | Civil No. 20-13030 (NLH/AMD) |

**ORDER**

This matter comes before the Court by way of motion [D.I. 54] filed by Plaintiff, Peter Reilly, seeking to compel Defendants The Home Depot U.S.A., Inc. (hereinafter, "Home Depot") and Tricam Industries, Inc. (hereinafter, "Tricam") to produce more specific responses to discovery. The Court addressed the motion during a hearing on the record on October 25, 2021, at which time the Court reserved decision on Plaintiff's request to compel the production of documents and information related to other ladder models and other incidents involving A-frame ladders made by Tricam from 1980 to August 8, 2018 and issued a ruling on all the other discovery issues raised in the motion. The Court then entered an Order dated October 26, 2021 confirming the directives from the bench. For the

reasons that follow and for good cause shown, Plaintiff's motion with respect to the remaining category of documents is denied.

In this action, Plaintiff alleges that he fell from a ladder which was purportedly manufactured, produced, designed or created by Defendant Tricam and was purchased from Defendant Home Depot's store in Lakewood, New Jersey. (Compl. [D.I. 1-1], p. 3, ¶¶ 11-14.) The ladder model in question was a ten-foot A-frame "Husky" model ladder. (*Id.* at p. 3, ¶ 11.) Plaintiff contends that Defendants knew or should have known that the subject ladder "was inadequate to withstand the normal, foreseeable forces of ordinary use by consumers and was prone to failure." (*Id.* at pp. 3, 4, ¶¶ 15, 18.) Plaintiff moves to compel Defendants to produce documents and information related to prior incidents involving A-frame ladders with rivets made by Tricam from 1980 to August 8, 2018, as well as documents for other ladder models "including testing; publications on design, testing, and performance; tests, studies or surveys regarding risk of injury; production log or manufacturing log; all model ladders Tricam designed and sold during the time period the ladder model in question was sold; testing regarding customer expectations; and Tricam's contracts with its sellers, specifically Home Depot[.]" (Br. in Supp. of Pl.'s Mot. to Compel More Specific Responses to Discovery of Defendants Tricam and Home Depot (hereinafter, "Pl.'s Br.") [D.I. 54-3], p. 1.)

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" FED. R. CIV. P. 26(b)(1). Further, under Rule 26, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Under Federal Rule of Civil Procedure 37, a party may file a motion to compel discovery when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B). "The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action[.]" *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).

The Court first addresses Plaintiff's request for documentation regarding other incidents involving the subject model ladder. Defendants represent that their counsel "could not locate any prior incident involving the subject ladder model." (Defs.' Br. in Opp. to Pl.'s Mot. to Compel More Specific Responses

3

to Discovery of Defs. Tricam and Home Depot (hereinafter, "Defs.' Opp. Br.") [D.I. 63], p. 7.) In light of Defendants' representation, the motion to compel Defendants to produce such documents is denied.

The Court next addresses Plaintiff's request for both incident and non-incident related documentation concerning other ladder models manufactured by Tricam. With respect to prior incidents, Plaintiff argues that in product liability cases, evidence of prior incidents may "show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident." (Pl.'s Br. at p. 9.) With respect to non-incident related documents, including documents relating to testing, design, performance, studies or surveys regarding risk of injury, a production log or manufacturing log, testing regarding customer expectations, and Tricam's contracts with its sellers including Home Depot, Plaintiff contends that the requested information goes "directly toward whether Defendants knew of the danger posed by their ladder's rivets yet did nothing to mitigate their ladders' design flaws." (*Id.* at p. 13.) Defendants contend with respect to discovery of other incidents that Plaintiff is only entitled to discovery of substantially similar incidents and that no prior incidents involving other A-frame ladders meet this requirement because "the circumstances of those incidents, the duty rating of the ladders involved, the materials of the ladders, and the sizes

4

of the ladders are all different from the subject ladder and the subject accident." (Defs.' Opp. Br. at p. 8.) With respect to non-incident related documentation, Defendants argue that such material is not relevant because "[d]ifferent models of ladders have different duty ratings which dictate the robustness or thickness of the materials used for [each] ladder[,]" that "different models of ladders also involve different designs which reflect different ways to support the users' weights[,]" and that "[d]ifferent materials used in different models of ladder also affect the number of connectors or rivets used to secure different parts together." (*Id.* at p. 6.) Defendants also note that "all ladders were and still are manufactured with rivets for securing the rungs, securing the supports for the rungs, and securing the spreader bars" and that Plaintiff's request is therefore, in essence, a request for documents concerning all A-frame ladder models manufactured by Tricam. (*Id.* at p. 3.)

In *Fine v. Facet Aerospace Products Company*, the court addressed the discoverability in a product liability case of non-incident related documents regarding other models than the model of the product that caused the plaintiff's injury. The plaintiff was injured when riding in a Cessna aircraft that crashed, and he brought suit against the aircraft manufacturer on theories of negligence and strict liability, arguing that the crash was caused by water in the aircraft's fuel system. *Fine v. Facet Aerospace*

5

*Prods. Co.*, 133 F.R.D. 439, 440 (S.D.N.Y. 1990). The manufacturer produced in redacted form internal reports addressing the history of the problem of water in the fuel systems of its aircraft, testing that was done, and possible solutions. *Id.* at 441. The manufacturer only produced sections of the reports regarding metal fuel tanks and protruding vented fuel caps, since the aircraft that crashed had those characteristics, but redacted those portions of the reports that concerned rubber bladder fuel tanks, wet wing fuel systems, and flush-type fuel filler caps as the aircraft that crashed did not have such components. *Id.* The court in *Fine* noted that "[g]enerally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation." *Id.* The *Fine* court further noted that "where there has been no suggestion that other models share pertinent characteristics with the products at issue, discovery relating to those models will be disallowed." *Id.* at 442. The court in *Fine* denied the plaintiff's request for discovery concerning other models because there was no showing that the other model components were potential substitutes for the components in the model that crashed. *Id.* at 443. The *Fine* court stated that the party seeking discovery must "make some threshold showing of relevance before the opposing party is obligated to open to discovery a variety of designs not directly at issue in the litigation." *Id.* While the

6

*Fine* court noted that such a showing could have been made by submission of an affidavit of an expert in aviation engineering, the plaintiff made no such showing and the court therefore denied the motion to compel discovery of information concerning other designs. *Id.*

In *Fassett v. Sears Holdings Corporation,* another product liability case, the court addressed the discoverability of both incident and non-incident related documents. The plaintiff was injured when the cap on the fuel tank of a lawnmower failed, causing gasoline to spray onto the plaintiff's body which ignited and caused injury. *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 147 (M.D. Pa. 2017). The plaintiff brought claims for, *inter alia*, negligence and strict liability. *Id.* at 148. The parties disagreed about "the extent to which material related to gas cap or lawnmower designs other than those specific ones involved in the accident should be discoverable." *Id.* The *Fassett* court employed a multi-factor test to determine whether the sought-after discovery shared relevant characteristics with the accident-causing model, including:

> (1) the extent to which the contested discovery can achieve the same functionality as the accident-causing part, despite facial design distinctions; (2) the extent to which the contested discovery could be safety tested using the same procedures and standards as would be used for the accident-causing part; (3) whether, compared with the accident-causing part, the contested discovery was an

7

> interchangeable component or a distinct system; and (4) the extent to which the moving party has supported its technical assertions with testimony by a witness who possesses adequate knowledge of the design, development, and functionality of the contested components.

*Fassett*, 319 F.R.D. at 151-52. In support of the request for documents concerning other models, the plaintiff had provided deposition testimony from the gas cap's product design and engineering manager, who identified three other variations of vent caps that functioned in the same manner as the gas cap that was used in the plaintiff's lawnmower. *Id.* at 152. Relying on the testimony of the witness, who the court found "possesses adequate knowledge of the design, development, and functionality of the contested components[,]" the *Fassett* court found that "warranty information, testing data, and any other materials evidencing over-pressurization or geysering corresponding to each of the enumerated free venting caps designs (open, screw, covered, and duckbill) [were] relevant to a number of [p]laintiffs' theories" and were therefore discoverable. *Id.* at 152-53. The court in *Fassett*, however, did not allow discovery of other incidents because the plaintiffs did not meet their burden of showing similarity as to the accidents involving other designs, noting that "each prior claim is capable of differing on a number of grounds: the age and prior history of the lawnmower; whether the lawnmower was a riding or push unit; the period of time for which

8

[the] lawnmower had been running on the date of the accident; the atmospheric conditions at the site of the accident; and the varied actions of the accident victims." *Id.* at 153.

Here, Plaintiff provides no support for his argument that discovery concerning all other model ladders is warranted because all A-frame ladders with rivets share pertinent characteristics with the ten-foot A-frame "Husky" model ladder at issue in this case. Plaintiff contends, without any support, that other ladder models "could be safety tested using the same procedures and standards as would be used for the accident-causing part because *presumably* Tricam employs industry-standard testing methods on all its ladders, and any alternative designs would be tested in identical ways." (Pl.'s Br. at 16)(emphasis supplied). Plaintiff further argues that all other A-frame ladders with rivets are similar to the subject model ladder because they all contain rivets – the component alleged to have failed in this case – and share the same A-frame layout. (*Id.* at p. 13.) However, Plaintiff has not cited the testimony of an expert or corporate witness regarding the similarity of other ladder models and fails to make a "threshold showing of relevance" sufficient to "open to discovery a variety of designs not directly at issue in the litigation." *See Fine*, 133 F.R.D. at 443. Absent any showing by Plaintiff that all other model A-frame ladders, regardless of height, material, or duty rating, support Plaintiff's claim that Defendants knew or

9

should have known that the rivets holding the spreader bar on "Husky" brand ten-foot A-frame ladders were prone to failure, the Court finds no basis to open to discovery various designs that are not directly at issue here. Accordingly, the Court denies Plaintiff's request for documents related to all other A-frame ladder models with rivets manufactured by Tricam.[1]

In so finding, the Court notes Plaintiff's reliance on this Court's decision in *Hall v. Johnson & Johnson*, No. 03-5153, 2005 WL 8175902, at *1 (D.N.J. July 21, 2005), as well as a number

---

[1] The Court further finds that Plaintiff fails to demonstrate the propriety of the temporal scope of the discovery requests, which seek thirty-eight years of documents. Plaintiff argues that this time frame is appropriate because "historical information is relevant to whether the same or substantially similar design, manufacturing, and testing processes have long been used by Tricam, and that Defendants Tricam and Home Depot knew about safety issues related to A-frame ladders with rivets made by Tricam since 1980." (Pl.'s Br. at p. 14.) Defendants note that Tricam was not established until 1988 and that the subject model ladder was only manufactured between 2004 and 2008, and they argue that thirty-eight years of records is overly broad. (Defs.' Opp. Br. at pp. 1, 4 n.4.) In *Fassett*, the plaintiff sought documents dating back to 1970 in connection with an incident that occurred in 2013. *Fassett*, 319 F.R.D. at 156-57. The court in *Fassett* noted that "courts in this Circuit have often taken the default position of limiting discovery to no earlier than five years from the date on which the allegedly tortious conduct occurred." *Id.* at 157. The *Fassett* court "slightly" modified the applicable time frame for a product liability action, finding that "the temporal bounds of [discovery] should be set not from the date of the accident but from the time period during which the product was manufactured and sold." *Id.* The court in *Fassett* limited discovery to the time period no earlier than 2000. *Id.* Likewise, the Court finds here that Plaintiff fails to demonstrate that records from the entire period of 1980 through the date of the incident in 2018 are discoverable under Rule 26, when the subject ladder model was only manufactured between 2004 and 2008.

of other cases which concerned discovery of other similar incidents.[2] In *Hall*, this Court held that other similar incidents may be discoverable in a product liability action, particularly to show notice of a defective product. The plaintiffs in *Hall* alleged that they "suffered injuries after surgically implanted prosthetic polyethylene knees or hips, designed and manufactured by [the] Defendants, deteriorated prematurely due to an allegedly defective sterilization process." *Hall*, 2005 WL 8175902, at *1. The plaintiffs sought production of the caption of all cases brought against the defendants for the prior ten years for claims for defective knees or hips and the disposition of each case, a summary

---

[2] For example, Plaintiff cites *Wheeler v. John Deere Co.*, 862 F.2d 1404 (10th Cir. 1988), *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070 (5th Cir. 1986), and *Wolf by Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613 (D.N.J. 1982). (*See* Pl.'s Br., pp. 10-11.) In each of these cases, the court concluded that *similar* incidents may be probative of a design defect. *See Wheeler*, 862 F.2d at 1408 (where plaintiff was injured while clearing auger of Titan series model 7720 combine and trial court permitted testimony of five witnesses who were similarly injured while clearing augers on Titan series combines, Court of Appeals noted that "[a]fter concluding that the five witnesses were injured in a manner similar to Wheeler, the trial judge rightly permitted them to testify because their accidents were probative of the alleged defect's existence"); *Jackson*, 788 F.2d at 1082 ("Evidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative of defective design."); *Wolf*, 555 F. Supp. at 622 (although evidence of other accidents and occurrences may be offered to prove defendant had notice of the dangerous situation that caused plaintiff's harm, where plaintiff alleged she suffered toxic shock syndrome from the defendant's product, court found that complaints of injuries other than toxic shock syndrome "would not serve to put defendants on notice of a defect in their product such as to cause the complex illness that is the subject of this litigation").

of all claims made against the defendants for the prior ten years concerning defective knees or hips where no lawsuit was filed and the disposition of each claim, and a summary of all notices received by the defendants from doctors concerning defective knees and hips that never became the subject of a lawsuit. *Id.* Notably, the discovery was limited to the particular devices that were the subject of the plaintiffs' complaints. *Id.* at *3. In addition, the sterilization process was alleged to be the same. *Id.* at *1. This Court concluded that "complaints made by others to Defendants concerning the alleged premature deterioration of . . . the products at issue are relevant under Rule 26 standards to the product liability claims and defenses here, and specifically to the issues of notice or lack thereof." *Id.* at *3.[3] The Court noted that "a number of cases . . . hold that [other similar incident] evidence is relevant in product liability cases and may be admissible at trial, and as relevancy is more broadly construed at the discovery stage than for purposes of trial, the Court finds that prior claims made to Defendants that the prosthetic devices deteriorated prematurely are discoverable pursuant to Fed. R. Civ.

---

[3] In 2015, subsequent to the decision in *Hall*, Rule 26(b)(1) was amended to set forth a proportionality requirement, but the provision that a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense" remains.

12

P. 26(b)(1)[.]" *Id.* (citing *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 104 (D.N.J. 1989)).

While the Court in *Hall* addressed the discoverability of other incidents involving the same products as the products alleged to have caused the plaintiffs' injuries, here Plaintiff's discovery requests are not limited to incidents involving the same ladder model as the ten-foot A-frame "Husky" model ladder at issue in this case. Courts have held that discovery of other incidents need not be limited to incidents involving the exact model at issue because incidents involving similar products may be discoverable on the issue of a design defect or notice. *See, e.g.*, *Smith v. Gorilla, Inc.*, No. 10-0017, 2010 WL 4286246, at *4 (D. Mont. Oct. 21, 2010) (defendant was required to produce discovery regarding another model ladder); *United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 410 (D. Md. 2005) ("'[Discovery] of other accidents involving similar products is relevant in products liability cases to show notice to defendants of the danger and cause of the accident.'")(quoting *In re Aircrash Disaster Near Roselawn, Ind.*, 172 F.R.D. 295, 306 (N.D. Ill. 1997)); *Uitts v. Gen. Motors Corp.*, 58 F.R.D. 450, 452 (E.D. Pa. 1972)(allowing discovery of information concerning similar accidents in other model vehicles manufactured by defendant with an identical component part).

However, Plaintiff fails to demonstrate that incidents involving other ladder models, regardless of height, material, or

13

duty rating, shed light on Plaintiff's claim that Defendants knew or should have known that the rivets holding the spreader bar on "Husky" brand ten-foot A-frame ladders were prone to failure. Moreover, Plaintiff does not address why other incidents, regardless of their nature, are relevant to the issues in this case.[4] Accordingly, Plaintiff fails to demonstrate that his request

---

[4] There are a number of cases in which plaintiffs alleged injury from A-frame ladders for reasons other than rivet failure. *See, e.g., Loomis v. Wing Enter., Inc.,* 756 F.3d 632, 633 (8th Cir. 2014)(where plaintiff fell off A-frame ladder, expert theorized that when plaintiff dragged ladder across driveway, ladder's legs were compressed together in a way that caused energy to be stored in the legs, which made ladder unstable); *Abbott v. Home Depot U.S.A., Inc.*, No. 10-972, 2012 WL 938632, at *1 (D. Nev. Mar. 19, 2012) (plaintiff injured when A-frame ladder folded inward at the hinges due to alleged failure of locking bolts, collapsing ladder forward and causing plaintiff to fall and sustain injuries); *McCauley v. Green Bull, Inc.*, No. 08-0789, 2009 WL 10684972, at *1 (E.D. Pa. Oct. 15, 2009)(plaintiff fell from A-frame ladder, alleging that lowest step on ladder was structurally deformed and failed under plaintiff's weight). Indeed, Plaintiff cites three other cases involving ladders manufactured by Tricam (Pl.'s Br. at p. 15), but none of those cases appears to involve rivet failure. *See Nein v. Tricam Indus., Inc.*, No. 16-3752, 2018 WL 2090116, at *1 (E.D. Pa. Mar. 28, 2018)(plaintiff alleged that ladder lacked "conventional spreader design" and instead used "J-Hook" design that plaintiff maintained was defective); *Geis v. Tricam Indus.*, No. 09-1396, 2010 U.S. Dist. LEXIS 144538, at *9 (D.N.J. Oct. 6, 2010) (plaintiff fell from ladder that allegedly twisted due to material that was too flexible, resulting in the failure of the ladder); *Mykolaitis v. The Home Depot*, No. 13-1868, Plaintiff's Brief in Opp. to Mot. to Exclude Testimony [D.I. 22], pp. 13, 21-22 (D.N.J. Nov. 3, 2014) (plaintiff alleged that ladder failed when siderails buckled because they lacked adequate strength to prevent the failure of the ladder siderail at its juncture with the lowest step). The Court thus rejects any argument that all other incidents involving A-frame ladders with rivets are relevant to the issues of the existence or notice of a defect in the rivets holding the spreader bar on "Husky" ten-foot A-frame ladders.

for all incident and non-incident related documents concerning all A-frame ladders with rivets is appropriate.[5] For these reasons, the Court finds that Plaintiff's discovery requests exceed the scope of Rule 26 discovery, and Plaintiff's motion to compel is therefore denied.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this **21st** day of **December 2021**,

---

[5] Citing the Third Circuit's decision in *Barker v. Deere and Co.*, 60 F.3d 158, 162 (3d Cir. 1995), Defendants argue that the evidence sought by Plaintiff here is not discoverable because incidents involving other ladders are not "substantially similar" to the incident at issue in this case. (Defs.' Opp. Br. at pp. 7-8.) The Court finds Defendants' reliance on *Barker* misplaced, however, because *Barker* addressed the *admissibility* of evidence concerning other incidents, not the *discoverability* of such evidence. *See Barker*, 60 F.3d at 162 ("In the appropriate circumstances, evidence of prior occurrences and accidents involving a product which is identical or substantially similar to the product which has allegedly caused an injury has generally been held to be admissible at trial.")(internal quotation omitted). Rule 26(b)(1) makes clear that the scope of discovery is broader than the scope of admissible evidence, as the rule expressly provides that "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); *see also Fassett*, 319 F.R.D. at 149 ("I cannot agree with the threshold assertion that what is discoverable is strictly limited to material that is ultimately relevant or otherwise admissible. As the parties well know, Rule 26(b)(1) envisions a broader universe of discoverable material than that."). Accordingly, the Court rejects Defendants' position that only "substantially similar" incidents are discoverable and finds that Plaintiff is entitled under Rule 26 standards to a broader scope of discovery. Plaintiff, however, has not sufficiently tailored his discovery requests to seek discovery within the scope of Rule 26(b).

**ORDERED** that Plaintiff's motion to compel [D.I. 54], with respect to the remaining category of documents shall be, and is hereby, **DENIED**.

                                              s/ Ann Marie Donio
                                              ANN MARIE DONIO
                                              UNITED STATES MAGISTRATE JUDGE

cc: Hon. Noel L. Hillman