[D.I. 174]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| PETER REILLY,<br><br>              Plaintiff,<br><br>      v.<br>THE HOME DEPOT U.S.A., INC., et al.,<br><br>              Defendants. | Civil No. 20-13030 (NLH/AMD)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

**APPEARANCES**:

Patrick D. MacAvoy, Esq
Marciano & MacAvoy P.C.
16 West Front Street
Media, Pennsylvania 19063

     *Counsel for Plaintiff*

Michael N. Giacopelli, Esq.
McVey & Parsky LLC
466 Southern Boulevard
Washington Building
Chatham, New Jersey 07928

     *Counsel for Defendants*

**DONIO**, **Magistrate Judge**:

          In this product liability case, Plaintiff Peter Reilly asserts that he suffered catastrophic injuries when he fell from an allegedly defective ten-foot A-frame ladder. The issue presently before the Court revolves around the late production of photographs and videos of the ladder and the scene of the

underlying incident. Specifically, on July 15, 2020, shortly before filing the complaint, Plaintiff's counsel went to the scene where the underlying incident occurred and took photographs and videos of the incident scene, including photographs that depict the inside of the house where Plaintiff allegedly fell and the ladder that is the subject of this lawsuit. Plaintiff did not identify these documents in his written discovery responses, nor did he include any reference to this material in a privilege log. Once Defendants, Home Depot U.S.A., Inc. (hereinafter, "Home Depot") and Tricam Industries, Inc. (hereinafter, "Tricam"), learned of the existence of the photographs, they sought to compel production of the documents. After the Court ordered Plaintiff to produce the documents, Plaintiff produced eighty-one photographs and three videos of the incident scene and ladder. Defendants now seek dismissal of the complaint as a discovery sanction for Plaintiff's late production of these photographs and videos. As an alternative sanction, Defendants seek the metadata associated with the photographs and videos, the opportunity to depose counsel for Plaintiff, and the costs and fees incurred in filing this motion. Plaintiff opposes the motion.

      The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78(b). Because the Court finds that Plaintiff had an obligation to produce these eighty-one photographs and three videos earlier in

the litigation and that his failure to make such disclosure impeded Defendants' ability to obtain information in support of their defenses, the Court will award sanctions. However, the Court finds that dismissal of the complaint as requested by Defendants is not an appropriate sanction under the factors set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867–68 (3d Cir. 1984), and Defendants' motion is therefore denied to the extent they seek the sanction of dismissal.

The background of this case is set forth in the Court's prior Order dated December 21, 2021. *See Reilly v. Home Depot USA, Inc.*, No. 20-13030, 2021 WL 6052407, at *1 (D.N.J. Dec. 21, 2021). Plaintiff alleges that on August 18, 2018, while remodeling the interior of a structure located in Brick, New Jersey, he ascended a ladder which then purportedly collapsed, "causing [Plaintiff] to suffer devastating and excruciating injuries." (Compl. [D.I. 1-1], p. 3, ¶¶ 11, 13.) Plaintiff avers that the ladder was manufactured, produced, designed or created by Defendant Tricam and was purchased from Defendant Home Depot's store in Lakewood, New Jersey. (*Id.* at p. 3, ¶¶ 12, 14.) On August 6, 2020, Plaintiff initiated this action against Defendants alleging that Defendants knew or should have known that the subject ladder "was inadequate to withstand the normal, foreseeable forces of ordinary use by consumers and was prone to failure." (*Id.* at pp. 3, 4, ¶¶ 15, 18.) Plaintiff contends that he suffered numerous injuries as a result

3

of the purported product defect, "including but not limited to, T12 and L2 compression fractures with retropulsion diskitis and abscess formation, cord compression at level S2, loculated right pleural effusion; epidural abscess, paraplegia, surgeries in the form of T10-L3 posterior instrumentation; T11 laminectomy; L3 laminectomy; T10-T11 posterior arthrodesis; T11-T12 posterior decent; T12-L1 posterior arthrodesis; L1-L2 posterior arthrodesis; L2-L3 posterior arthrodesis; multiple bone-grafting procedures; [and] bed sores[.]" (*Id.* at pp. 4-5, ¶ 24.) Plaintiff also alleges additional damages including mental and emotional pain and suffering, chronic physical pain, "loss of life's pleasures, past, present and future[,]" lost wages and loss of earning capacity, medical expenses, and "other psychological, psychiatric, and neurological injuries[.]" (*Id.*)

The parties have experienced a myriad of discovery issues throughout the litigation of this case, *see, e.g.*, *Reilly*, 2021 WL 6052407, at *2, and have participated in numerous discovery conferences with the Court. As the fact discovery period finally approached the much-extended deadline, Defendants raised an issue concerning photographs that were not produced in discovery. (*See* Letter from Michael N. Giacopelli, Esq. [D.I. 132], May 6, 2022,

pp. 2-3.)[1] These photographs, as well as videos, were taken when Plaintiff's counsel and personnel from a forensic storage facility went to the house in Brick, New Jersey where Plaintiff's alleged fall in 2018 occurred. (Transcript of Telephone Discovery Conference [D.I. 150], May 26, 2022, p. 10:8-20.) Although Plaintiff had previously produced nine photographs in discovery,[2] the eighty-one photographs and three videos now at issue were not produced in discovery or identified by Plaintiff on a privilege log and, as Defendants assert, the existence of which was only revealed after Defendants continued to seek information about the scene of the underlying incident. (Defs.' Mem. in Supp. of their Mot. for Dismissal or Sanctions (hereinafter, "Defs.' Br.") [D.I. 174-2], pp. 1-2, 4.) Plaintiff previously asserted that the documents were protected work product; however, after argument on the issue the Court entered an Order dated June 13, 2022 requiring that the photographs and videos be produced. (*See* Order [D.I. 146], June 13, 2022, p. 1, ¶ 1.) Plaintiff complied with the court order

---

[1] At the time the issue was raised, it does not appear that Defendants' counsel was aware that videos taken contemporaneously with the photographs also existed.

[2] The date on which these nine photographs were taken or produced is unclear. The Court notes that Plaintiff's initial discovery responses, dated January 11, 2021, refer to nine photographs "previously produced Bates Stamped PL 001-009" but the parties do not specify the date on which these pictures were taken or produced. (Cert. of Michael N. Giacopelli in Supp. of Mot. for Dismissal or Sanctions (hereinafter, "Giacopelli Cert."), Sept. 23, 2022, Ex. 1 [D.I. 174-5], p. 13.)

and produced the photographs and videos to Defendants. (Pl.'s Br. in Opp. to Defs.' Mot. for Dismissal or Sanctions (hereinafter, "Pl.'s Opp. Br.") [D.I. 181], p. 3.) However, upon reviewing the photographs and videos, Defendants recognized – and Plaintiff does not dispute – that the interior of the house where the underlying incident occurred was in a substantially different condition in the July 15, 2020 photographs and videos than the condition depicted in the pictures that Plaintiff presented to witnesses during depositions in this case. (Defs.' Br. at pp. 5-6.) Consequently, Defendants seek sanctions for Plaintiff's failure to disclose the initially withheld eighty-one photographs and three videos when requested in discovery.

In considering the motion for sanctions, the Court shall first address the nature of the photographs and videos and the manner in which their existence came to light. Defendants requested in discovery photographs and videos of the subject ladder and the location of the underlying incident on December 4, 2020 by serving documents requests on Plaintiff. (Defs.' Br. at p. 2.) Plaintiff responded to Defendants' discovery requests on January 11, 2021 by raising a work product objection, by asserting that investigation and discovery were continuing, and by stating that without waiving the work product objection, all discovery materials in Plaintiff's

possession had been produced.[3] (Giacopelli Cert., Ex. 1 [D.I. 174-
5].) In addition, Plaintiff referenced nine photographs that had
been previously produced in discovery, but he did not indicate in
his January 11, 2021 response that he was withholding eighty-one

---

[3]  The requests and responses included the following:

22. Any and all photographs that were ever taken of the Subject
Ladder before and/or after the Incident.

ANSWER: Objection. Work product. Without waiving said objection,
all discovery materials in Plaintiffs' possession have been
produced. See photographs previously produced Bates Stamped PL
001-009. By way of further response, investigation and discovery
are continuing.

23. Any and all video that were ever taken of the Subject Ladder
before and/or after the Incident.

ANSWER: Objection. Work product. Without waiving said objection,
all discovery materials in Plaintiffs' possession have been
produced. By way of further response, investigation and discovery
are continuing.

24. Any and all photographs that were taken of the location of the
Incident before and/or after the Incident. Please also mark the
ladder's location with "x's" where the ladder's feet were placed
when your fall occurred.

ANSWER: Objection. Work product. Without waiving said objection,
all discovery materials in Plaintiffs' possession have been
produced. By way of further response, investigation and discovery
are continuing.

25. Any and all video that were taken of the location of the
Incident before and/or after the Incident.

ANSWER: Objection. Work product. Without waiving said objection,
all discovery materials in Plaintiffs' possession have been
produced. By way of further response, investigation and discovery
are continuing.

(Giacopelli Cert., Ex. 1 [D.I. 174-5].)

photographs and three videos as work product, nor did he produce a privilege log identifying the withheld documents. (*See id.*) On February 4, 2021, Plaintiff served supplemental responses to Defendants' discovery seeking "[a]ll documents prepared or relating to the Incident or any events surrounding the Incident, including but not limited to investigative reports, prepared by any party or non-party to this action." (*Id.*) Plaintiff's response to this request was "None" and Plaintiff again did not provide a privilege log or otherwise disclose that he was in possession of eighty-one photographs and three videos but had withheld such documents on work product grounds. (*See id.*)

On March 2, 2022, Plaintiff's counsel took the deposition of a fact witness, William Castagno, and at that time presented to the witness photographs of the interior of the structure where Plaintiff's alleged fall occurred which, according to Plaintiff's counsel, were taken in January 2021.[4] (Defs.' Br. at pp. 3-4; Transcript of Telephone Discovery Conference [D.I. 150], May 26, 2022, pp. 10:25-13:1.) Mr. Castagno testified that the photographs presented at the deposition showed a "completely

---

[4] Counsel stated at Mr. Castagno's deposition that the photographs of the interior of the structure utilized at the deposition, Bates Stamped PL 5720-5727, were taken during a joint inspection with defense counsel and were not the photographs previously produced in discovery, which were Bates Stamped PL 001-009. (Giacopelli Cert., Ex. 4 [D.I. 174-8], p. 28:5-16.) Defendants did not raise any issue concerning Plaintiff's failure to produce prior to the deposition the photographs Bates Stamped PL 5720-5727. (*See id.*)

different" scene than the scene when Plaintiff fell in August 2018, noting that the structure in 2018 "was all just . . . bare wood and concrete" as "it was pretty much just studded out, it was not Sheetrocked yet" and the flooring was just a "concrete slab" in 2018, whereas the structure in the photographs shown at the deposition had walls that were Sheetrocked, appeared painted, and "there might be some kind of flooring down" which was not in place in 2018. (Cert. of Michael N. Giacopelli in Supp. of Mot. for Dismissal or Sanctions (hereinafter, "Giacopelli Cert."), Sept. 23, 2022, Ex. 4 [D.I. 174-8], pp. 29:3-30:10.)[5] In addition, Plaintiff's counsel marked as an exhibit during the Castagno deposition a photograph, Bates Stamped PL 5719, which was not previously produced in discovery and which depicted the outside of the house where Plaintiff's alleged fall occurred. (Defs.' Br. at pp. 3-4.) Unlike the photographs of the interior of the house presented to the witness, Plaintiff's counsel did not expressly advise defense counsel when marking PL 5719 as an exhibit that

---

[5] At his deposition on April 26, 2022, when presented with the January 2021 photographs, Plaintiff similarly testified that the room looked different on the date of his alleged fall in 2018 than in the photographs utilized at his deposition, stating that the room previously was "[m]ostly down to the studs" and there was only "30, 35 percent of Sheetrock ceiling still up" in 2018, but since 2018 "[t]he room has changed" as "[t]hey added central air" and "did away with the ceiling fans[.]" (Giacopelli Cert., Ex. 6 [D.I. 174-10], pp. 116:9-21, 117:4-9.)

this photograph was not previously produced in discovery. (*See* Giacopelli Cert. [D.I. 174-8], Ex. 4, p. 26:7-22.)

Defendants assert that Mr. Castagno's deposition testimony "raised questions about the condition of the room where the alleged incident occurred and how it differed from the condition depicted in the photographs that [Plaintiff] produced." (Defs.' Br. at p. 4.) Defendants thus served a supplemental discovery request in an effort "to gain more information about changes in the accident scene[.]" (*Id.* at p. 4.) Plaintiff responded to Defendants' supplemental discovery request on April 28, 2022 again asserting a work product claim, but neither identified the existence of the documents nor produced a privilege log.[6] (*See* Giacopelli Cert., Ex. 5 [D.I. 174-9].) Defendants

---

[6] The supplemental request and Plaintiff's response are as follows:

REQUEST FOR PRODUCTION NO. 7

Any and all photographs or videos taken of the ladder in the condition it was in and the location it was in on the premises when first observed by Plaintiff, your counsel, or any retained vendor/consultant/investigator following the incident, up until July 15, 2020.

RESPONSE: Objection – work product. New Jersey's work-product doctrine (Rule 4:10-2(c)) protects disclosure of any such photographs. A party can only discover items prepared in anticipation of litigation or trial that were prepared by the attorney "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means". *Id.* Counsel for Defendant Tricam has inspected the ladder, had the opportunity to

contend that Plaintiff's response to the supplemental document request made it "clear that someone had taken other Photographs of the accident ladder when [Plaintiff's] counsel collected the ladder, but [Plaintiff] had not produced or logged those photographs during discovery." (Defs.' Br. at p. 4.)

After the issue was raised with the Court pursuant to Local Civil Rule 37.1 and the parties presented their respective arguments concerning whether the documents constituted work product,[7] the Court issued an oral opinion finding that Plaintiff must produce the photographs and videos that were taken by Plaintiff's counsel on July 15, 2020. (Transcript of Telephonic Discovery Conference [D.I. 147], June 9, 2022, pp. 12:11-23:3.) The Court made no specific finding that the documents constituted work product but concluded that even if such documents were work product,[8] they must be produced because Defendants had a

---

photograph the ladder, and is in possession of or has access to any photographs he or his expert may have taken.

(Giacopelli Cert., Ex. 5 [D.I. 174-9].)

[7] See Letter from Patrick D. MacAvoy, Esq. [D.I. 141], June 3, 2022; Letter from Michael N. Giacopelli, Esq. [D.I. 142], June 3, 2022.

[8] Plaintiff cited to New Jersey state law regarding work product protection rather than Federal Rule of Civil Procedure 26(b)(5) in his initial letter brief on this issue. (See Letter from Patrick D. MacAvoy, Esq. [D.I. 133], May 6, 2022, pp. 6-8.) At oral argument, the Court questioned Plaintiff's citation to state law and noted that work product is governed by Rule 26 of the Federal Rules of Civil Procedure. (Transcript of Telephonic Discovery

substantial need for the documents and could not obtain their substantial equivalent by other means without undue hardship. (*Id.* at p. 17:15-24.) Plaintiff thereafter produced the eighty-one photographs and three videos. (Defs.' Br. at p. 5.)

Plaintiff does not dispute Defendants' assertion that the July 15, 2020 photographs and videos show the interior of the structure in a much different condition than the January 2021 photographs presented during the depositions of Plaintiff and Mr. Castagno. In addition, the photographs used during the depositions depict an exemplar ladder that defense counsel brought to the joint inspection in January 2021 and do not depict the ladder shown in the initially withheld photographs and videos, which is purportedly the ladder at issue in this case. (*See* Transcript of Telephone Discovery and Status Conference [D.I. 177], Sept. 21, 2022, pp. 6:13-8:6.) The eighty-one photographs and three videos of the ladder and incident scene, however, were not produced until months after the depositions of Plaintiff and Mr. Castagno.

In seeking dismissal of Plaintiff's complaint as a sanction for Plaintiff's failure to disclose the July 15, 2020 photographs and videos earlier in discovery, Defendants contend

---

Conference [D.I. 150], May 26, 2022, pp. 14:4-15:22.) The Court provided the parties an opportunity to brief the issue in accordance with federal law, and the parties subsequently filed their June 3, 2022 letter briefs wherein Plaintiff acknowledged that the federal rule governed.

that the documents would have been "useful" when Defendants
conducted the deposition of Plaintiff and Mr. Castagno, as much of
each deposition was devoted to understanding the condition of the
ladder and the scene of the incident when Plaintiff fell in 2018.
(Defs.' Br. at pp. 7, 10.) Defendants note the witnesses'
difficulty in describing the condition of the premises at the time
of the incident, as both witnesses testified that the photographs
they were shown during the depositions depicted the premises in a
much different condition than the scene at the time of the
incident. (*Id.* at pp. 4-5.) Defendants also note that the recently-
produced photographs "showed the scene in a far different
condition" than the nine photographs produced in discovery. (*Id.*
at p. 1.) Defendants contend that because they did not have access
to the July 15, 2020 photographs and videos prior to the
depositions, they "had no meaningful opportunity to question
[Plaintiff] and a non-party witness about the scene as it existed
on the day of the accident." (*Id.* at p. 2.) Defendants argue that
they require an understanding of where the subject ladder was
placed, what was near the ladder at the time of Plaintiff's fall,
and the general condition of the incident scene so that they may
prepare an accurate reconstruction of the accident. (*Id.* at p. 6.)

        The Court first addresses on what basis sanctions are
warranted. The starting point of this analysis is Federal Rule of
Civil Procedure 26(a), which provides in relevant part that "a

party must, without awaiting a discovery request, provide to the other parties . . . a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" FED. R. CIV. P. 26(a)(1)(A)(ii). Here, Plaintiff utilized one of the eighty-one withheld photographs in support of his claims in this case, having presented the photograph Bates Stamped PL 5719 during the deposition of Mr. Castagno, and Plaintiff was arguably required to produce that photograph as part of his initial disclosures under Federal Rule of Civil Procedure 26(a). Plaintiff's use of the photograph also raises the issue of whether Plaintiff waived the assertion of work product protection for the remaining photographs and videos of the house taken by Plaintiff's counsel on the same date.[9] However, the Court need not address this waiver issue as the Court addressed the work product argument previously. Rather, the Court finds that Plaintiff's failure to disclose the photograph Bates Stamped PL 5719 and the subsequent

---

[9] Pursuant to Federal Rule of Evidence 502, when a party discloses a document covered by work product protection, "the waiver extends to an undisclosed communication . . . if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." FED. R. EVID. 502(a).

use of the photograph at Mr. Castagno's deposition constitutes a violation of Federal Civil Rule 26(a).[10]

Moreover, Plaintiff violated Rule 26(b)(5) by failing to disclose that he withheld eighty-one photographs and three videos as work product. While Federal Civil Rule 26(b)(3) limits discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[,]" FED. R. CIV. P. 26(b)(3)(A), Rule 26(b)(5) requires a party to disclose the existence of documents being withheld as work product. Specifically, when a party withholds materials as work product, the party must "describe the nature" of the withheld materials "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A). Rule

---

[10] Assuming that Plaintiff did not intend to utilize this photograph at the time he served his initial disclosures, he was nonetheless required pursuant to Federal Rule of Civil Procedure 26(e)(1) to disclose this discovery as soon as he intended to utilize the photograph at the Castagno deposition. *See* FED. R. CIV. P. 26(e)(1)(A) ("A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"). Therefore, even if Plaintiff did not violate Federal Rule of Civil Procedure 26(a) by failing to produce the photograph as part of his initial disclosures, he violated Rule 26(e) by failing to supplement his initial disclosures.

26(b) thus makes clear that "[a] party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection." FED. R. CIV. P. 26(b) advisory committee's note to 1993 amendment. Likewise, Federal Rule of Civil Procedure 34 requires a party who objects to a document request to "state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C); *see also* L. CIV. R. 34.1 ("Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed[.] . . . When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist."). The requirements in Federal Civil Rules 26 and 34, as well as Local Civil Rule 34.1, that a party produce all documents it intends to use in support of its claims and identify documents withheld as work product is consistent with the spirit of open discovery, a hallmark of the principles set forth in the Federal Rules of Civil Procedure. *See Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947) (noting that discovery mechanisms set forth in Federal Rules of Civil Procedure enable "the parties to obtain the

fullest possible knowledge of the issues and facts before trial"). Indeed, "[t]o withhold materials without [] notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." FED. R. CIV. P. 26(b) advisory committee's note to 1993 amendment. Here, Plaintiff failed to comply with Federal Rules of Civil Procedure 26 and 34 and Local Civil Rule 34.1 because he failed to produce the photograph Bates Stamped PL 5719 with his initial disclosures and failed to appropriately identify that he withheld eighty-one photographs and three videos as work product.

Had Plaintiff disclosed the photograph Bates Stamped PL 5719 in his initial disclosures and produced a privilege log with respect to the remaining photographs and videos at that time or at the time he responded to discovery in January 2021, Defendants would have been alerted to the existence of other photographs taken closer in time to the underlying incident than the photographs that were produced in discovery in January 2021. Moreover, not only did Plaintiff's counsel fail to disclose the photograph Bates Stamped PL 5719 prior to the Castagno deposition, but when presenting the photograph to the witness during the deposition counsel failed to advise defense counsel that the photograph had not been previously produced in discovery. (*See* Giacopelli Cert. [D.I. 174-8], Ex. 4, p. 26:7-22.) By contrast, Plaintiff's counsel expressly stated during the Castagno deposition that other

photographs presented to the witness, which were taken during the joint inspection with defense counsel in January 2021, had not been previously produced in discovery. (*Id.* at p. 28:5-16.) Plaintiff's counsel's conduct appears to be an effort to avoid placing Defendants on notice that there were additional photographs that had not previously been produced or identified. By the time Defendants served their supplemental discovery request and Plaintiff responded with a work product objection, the depositions of fact witnesses had already occurred and fact discovery was nearing completion.

Plaintiff argues in opposition to the motion that he acted properly because he asserted a *bona fide* work product claim with respect to the photographs and videos, promptly produced the documents after the Court ordered such discovery to be produced, and never implied that the photographs and videos did not exist. (Pl.'s Opp. Br. at pp. 2, 4.) The Court finds these representations disingenuous in light of the record. Specifically, although Plaintiff asserted a work product claim in his response to Defendants' requests for all photographs and videos of the subject ladder and the scene of the underlying incident, he further responded that "all discovery materials in Plaintiff['s] possession have been produced." (Giacopelli Cert., Ex. 1 [D.I. 174-5], p. 13.) Plaintiff did not indicate at that time that he was withholding eighty-one photographs and three videos as work

product as required by Federal Rules of Civil Procedure 26(b)(5)(A)(ii) and 34(b)(2)(C) and Local Civil Rule 34.1. Furthermore, in response to Defendants' request for "[a]ll documents prepared or relating to the Incident or any events surrounding the Incident, including but not limited to investigative reports, prepared by any party or non-party to this action[,]" Plaintiff provided a supplemental response stating "None." (*Id.* at p. 16.) Again, Plaintiff did not disclose the existence of the June 15, 2020 photographs and videos and, in addition, did not produce a privilege log identifying the photographs or videos as required by Federal Rule of Civil Procedure 26(b)(5). Therefore, not only did Plaintiff fail to voluntarily disclose any photographs used or relied upon as required by Rule 26(a), but his written discovery responses, coupled with the absence of a privilege log, created an implication that such discovery did not even exist. This conduct, the Court finds, was in violation of Federal Civil Rules 26(a), 26(b)(5), and 34, as well as Local Civil Rule 34.1.

Having found that Plaintiff failed to comply with the court rules, the Court next turns to the issue of sanctions and considers whether dismissal of the complaint – the sanction requested by Defendants – is the appropriate sanction under the circumstances. Defendants argue that dismissal is appropriate under Federal Rule of Civil Procedure 37, but they do not specify

which provision of Rule 37 applies in this case. The Court notes that pursuant to Rule 37(a)(4), when a party provides "an evasive or incomplete disclosure," the response "must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). While the Court has concluded that Plaintiff's discovery responses were evasive and incomplete, dismissal of the complaint is not an available sanction under Rule 37(a). *See* FED. R. CIV. P. 37(a)(5)(providing for an award of costs and fees as a sanction for violation of Federal Rule of Civil Procedure 37(a)). Dismissal of a complaint is a sanction delineated under Federal Rule of Civil Procedure 37(b)(2), but Rule 37(b) applies when a party fails to comply with a court order. FED. R. CIV. P. 37(b)(2)(A)(v). In this case, once the Court ordered Plaintiff to produce the withheld photographs and videos, Plaintiff promptly complied with the order, and Rule 37(b) thus cannot serve as a basis to impose sanctions against Plaintiff for his discovery conduct.

Sanctions, however, may be imposed under Rule 37(c) in the form of preclusion of a party's evidence that was not produced under Rule 26(a) or (e) "unless the failure [to produce] was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Moreover, in lieu of or in addition to preclusion, "the court, on motion . . . (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other

appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." *Id.* This "provision is self-executing [as] there is no need for a litigant to make a motion to compel" and "the imposition of a sanction under this provision [does not] require a violation of a court order as a prerequisite." *Tarlton v. Cumberland Cnty. Corr. Facility*, 192 F.R.D. 165, 169 (D.N.J. 2000); *see also Trowery v. O'Shea,* No. 12-6473, 2015 WL 9587608, at *5 (D.N.J. Dec. 30, 2015)(finding violation of Rule 26(a) and (e) warranted sanctions under Rule 37(c)). Indeed, "[l]itigants are warned not to 'indulge in gamesmanship with respect to the disclosure obligations.'" *Tarlton*, 192 F.R.D. at 169 (quoting FED. R. CIV. P. 26(b) advisory committee's note to 1993 amendment); *see also Zawadsky v. Bankers Standard Ins. Co.*, No. 14-2293, 2015 WL 10853517, at *7 (D.N.J. Dec. 30, 2015)(finding sanctions warranted pursuant to Federal Rule of Civil Procedure 37(c)(1) for defendant's failure to produce document required to be produced under Federal Rule of Civil Procedure 26(a) and late production was not substantially justified).

In addition to the Court's authority to issue sanctions for discovery violations under Rule 37(c), "[t]he Court . . . has inherent power to police litigant misconduct and impose sanctions on those who abuse the judicial process." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006); *see also Hornady v. Outokumpu Stainless USA*, 572 F. Supp. 3d 1162, 1185 (S.D. Ala.

2021)("While Rule 37 governs sanctions for discovery-related misconduct only, a court may exercise its inherent sanctioning power to punish all types of contumacious conduct."), *reconsideration denied,* No. 18-00317, 2022 WL 5052293 (S.D. Ala. Oct. 4, 2022). Even where sanctions are authorized by statute or court rules, "[t]hese other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. . . . These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (citations and internal quotations omitted). "[I]f in the informed discretion of the court, neither [28 U.S.C. § 1927] nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50. Of particular relevance here, the court's inherent power includes *sua sponte* dismissal of a case and "the 'less severe sanction' of an assessment of attorney's fees[.]" *Id.* at 44-45.

When a party fails to comply with the discovery rules or a court order, sanctions are available "'to penalize those whose

conduct may be deemed to warrant such a sanction[.]'" *Trowery*, 2015 WL 9587608, at *5 (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). Indeed, "[i]t is fundamental to our litigation system that parties rely on each other's good faith and professional responsibilities to comply with the Rules of Civil Procedure." *Parker v. Atl. City Bd. of Educ.*, No. 15-8712, 2017 WL 662979, at *3 (D.N.J. Feb. 17, 2017). "The integrity of the discovery process rests on the faithfulness of parties and counsel to the rules — both the spirit and the letter." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 507 (D. Md. 2000); *see also Tarlton*, 192 F.R.D. at 169 ("The federal discovery rules, Fed. R. Civ. P. 26 through 37, in conjunction with Fed. R. Civ. P. 16 governing a court's authority to manage a case through status conferences and scheduling orders, were carefully designed to structure the pretrial process in a way to move a case or controversy to resolution on the merits in the fairest and most efficient way possible. A party's attempt to circumvent this process in the name of litigation strategy does a serious disservice to this system and will be met with the imposition of sanctions, as provided for in the rules."). "'Where a party has willfully withheld highly relevant and highly adverse material from discovery, despite specifically tailored and repeated requests for such material, sanctions are appropriate.'"

*Trowery*, 2015 WL 9587608, at *5 (quoting *Gallant v. Telebrands Corp.*, 35 F. Supp. 2d 378, 404 (D.N.J. 1998)).

The Court concludes that sanctions are warranted under Rule 37(c) and the Court's inherent power for Plaintiff's discovery conduct in this case. Rather than acknowledging the existence of the photographs and videos and providing a privilege log, Plaintiff's counsel's conduct resulted in concealment of the existence of the documents. Plaintiff's counsel fails to proffer any justification – let alone substantial justification – for failing to disclose the existence of these documents through a privilege log. Moreover, Plaintiff's counsel does not attempt to explain why it was appropriate for counsel to use during the Castagno deposition a photograph that was never produced in discovery or why it was proper to disclose one photograph that purportedly constituted work product while shielding from disclosure the other photographs and videos taken on the same day. Furthermore, even assuming that Plaintiff in good faith believed that he was not required to disclose these photographs and videos under Rule 26(a) or Rule 26(e) because of a work product claim, Plaintiff's counsel offers no explanation for the failure to serve a privilege log identifying the existence of these documents as expressly required by the court rules. Plaintiff's counsel had a responsibility to follow the proper protocol when asserting work product protection with respect to responsive documents that were

24

in counsel's possession, yet counsel did not follow this procedure. But for Defendants' continued persistence in requesting information concerning the incident scene, the existence of these documents may never have been revealed.[11] This is not how the discovery process is intended to work; "[d]iscovery in federal court is not a game of hide the ball[.]" *Hosea v. Langley*, No. 04-0605, 2006 WL 314454, at *5 (S.D. Ala. Feb. 8, 2006), *aff'd*, 226 F. App'x 863 (11th Cir. 2007). "'[T]he spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by . . . unnecessary use of defensive weapons or evasive responses.'" *Moses v. United Parcel Serv., Inc.*, No. 21-670, 2022 WL 912589, at *3 (W.D. Pa. Mar. 29, 2022)(quoting FED. R. CIV. P. 26(b) advisory committee's note to 1983 amendment).

For the reasons discussed below, however, the Court finds that dismissal of the complaint is not an appropriate sanction under the circumstances. "The Court has broad discretion

---

[11] In this regard, the Court rejects Plaintiff's argument that Defendants should have raised this work product issue earlier. (*See* Pl.'s Opp. Br. at p. 5.) Plaintiff's discovery responses could not have placed Defendants on notice that documents existed but were being withheld as work product in light of Plaintiff's assertion in response to Document Request Numbers 22 and 24 that without waiving the work product objection all discovery material in Plaintiff's possession had been produced and in responding "None" to Request Number 11, which sought "[a]ll documents prepared or relating to the Incident or any events surrounding the Incident[.]" (Giacopelli Cert., Ex. 1 [D.I. 174-5], pp. 13-16.)

regarding the type and degree of sanctions it can impose, but the sanctions must be just and related to the claims at issue." *Wachtel*, 239 F.R.D. at 84 (internal citations omitted). "Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). The Third Circuit, however, has often stated that "dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court, and are to be reserved for comparable cases." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867–68 (3d Cir. 1984) (citing *Nat'l Hockey League*, 427 U.S. at 643); *see also Knoll*, 707 F.3d at 409 (noting that "'dismissals with prejudice . . . are drastic sanctions'")(quoting *Poulis*, 747 F.2d at 867); *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 132 (3d Cir. 2019)(same). Indeed, "cases should be decided on the merits barring substantial circumstances in support of the contrary outcome" and there is a "strong policy favoring decisions on the merits[.]" *Hildebrand*, 923 F.3d at 132. The Third Circuit has thus set forth the following factors that a court should consider when deciding whether the sanction of dismissal is appropriate in a particular case (hereinafter, the "*Poulis* factors"):

(i) the extent of the party's personal responsibility;

(ii) the prejudice to the adversary caused by the failure to respond to discovery;

(iii) a history of dilatoriness;

(iv) whether the conduct of the party or the attorney was willful or in bad faith;

(v) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and

(vi) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis omitted); *see also United States v. Brace*, 1 F.4th 137, 141 (3d Cir. 2021) (noting that *Poulis* factors must be considered before imposing sanction of dismissal).

In analyzing the first *Poulis* factor, the Court considers "whether the party bears personal responsibility for the action or inaction[.]" *Adams v. Tr. of the New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994). Defendants do not argue that the first *Poulis* factor supports dismissal, and there is no indication that Plaintiff knew that the June 15, 2020 photographs and videos existed, let alone was responsible for the failure to produce or identify these documents in discovery. Indeed, when questioned at his deposition about the incident scene, Plaintiff did not request to see or refer to the July 15, 2020 photographs to aid his testimony, nor did he otherwise indicate that he had any knowledge that such photographs or videos existed. Moreover, the photographs and videos were taken with Plaintiff's counsel's cell phone, Plaintiff was not present

during the site inspection, and counsel noted during a hearing that even he had not realized that he recorded videos during the inspection. (Transcript of Telephonic Discovery Conference [D.I. 147], June 9, 2022, p. 23:6-16.) Consequently, the Court finds that the first *Poulis* factor does not weigh in favor of dismissal.

The Court next considers the prejudice suffered by Defendants as a result of Plaintiff's conduct. *Poulis*, 747 F.2d at 868. The prejudice to other parties caused by the delay may include "whether the party's conduct has resulted in 'extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party.'" *Chiarulli v. Taylor*, No. 08-4400, 2010 WL 1371944, at *3 (D.N.J. Mar. 31, 2010) (quoting *Huertas v. City of Phila.*, No. 02-7955, 2005 WL 226149, at *3 (E.D. Pa. Jan. 26, 2005), *aff'd*, 139 F. App'x 444 (3d Cir. 2005)), *report and recommendation adopted by* 2010 WL 166316, at *1 (D.N.J. Apr. 16, 2010). In addition, a party may be prejudiced if the adversary's conduct impedes "its 'ability to prepare effectively a full and complete trial strategy[.]'" *Id.* (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)). Prejudice may also include "'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" *Adams*, 29 F.3d at 874 (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984)).

28

Defendants argue that they are prejudiced by Plaintiff's withholding of the photographs and videos because Defendants were unable to properly depose Plaintiff and Mr. Castagno without this discovery. (Defs.' Br. at p. 9.) Defendants specifically note that without the photographs, "the witnesses were tasked with trying to describe the scene, placement of the ladder, and the activities of the day while faced with photographs that were completely different than what they experienced at the time[,]" which purportedly resulted in "significant confusion and disjointed testimony on key factual issues in the case." (*Id.*) The Court agrees that Defendants have been prejudiced by the delayed production in that depositions were conducted without the benefit of photographs and videos taken closer in time to the underlying incident. Both witnesses testified that the January 2021 photographs they were shown depicted the scene in a significantly different condition than the scene at the time of the underlying incident. (*See, e.g.*, Giacopelli Cert., Ex. 4 [D.I. 174-8], p. 29:3-9; Ex. 6 [D.I. 174-10], p. 116:9-25.) In addition, the photographs shown during the depositions depicted an exemplar ladder rather than the ladder at issue in this case, which thereby precluded inquiry into the condition of the ladder.[12] Had

---

[12] Plaintiff has represented in the course of this litigation that he is unaware of what happened to the ladder between the date of his fall in 2018 and the date the ladder was retrieved by counsel on July 15, 2020. (Letter from Patrick D. MacAvoy, Esq. [D.I. 133], May 6, 2022, p. 6.) If the witnesses had been presented with the July 15, 2020 pictures of the ladder during their depositions,

Plaintiff produced the July 15, 2020 photographs and videos with his initial disclosures, or at least raised the work product issue by providing a privilege log in response to Defendants' discovery requests as required by Federal Civil Rule 26(b)(5), Defendants would have had the documents sooner or been in a position to challenge Plaintiff's work product designation earlier in the litigation. Clearly, Defendants were prejudiced in their ability to prepare effectively a full and complete examination concerning the condition of the premises and ladder. The Court finds that the second *Poulis* factor weighs in favor of dismissal.

Under the third *Poulis* factor, the Court considers whether the non-moving party has a history of dilatoriness. *Poulis*, 747 F.2d at 868. "'Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.'" *Chiarulli*, 2010 WL 1371944, at *3 (quoting *Adams*, 29 F.3d at 874). However, "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008). "Furthermore, a party's problematic acts must be evaluated in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875. Courts

they could have provided testimony on the condition of the ladder as shown in the photographs as compared to the condition of the ladder on the date of Plaintiff's fall in 2018.

have found a history of dilatoriness supporting dismissal when a plaintiff's failure to comply with court orders, appear for hearings, or engage in discovery is extensive and repeated. *See, e.g., Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 694 (3d Cir. 1988)("The record on appeal demonstrates a significant pattern of delay, including failure to comply fully with document requests evidenced by [plaintiff's] continued delivery of documents after the court's second discovery deadline, failure to answer fully [defendant's] expert interrogatories, and repeated failures by [plaintiff's witnesses] to attend depositions, which actions necessitated repeated motions to compel."); *Ware*, 322 F.3d at 224 (plaintiff "failed repeatedly" to provide a damages calculation over a five-year period); *Preston v. EMR Scrap*, No. 16-2612, 2017 WL 4222935, at *2 (E.D. Pa. Sept. 22, 2017)(plaintiff's failure to attend three scheduled depositions supported dismissal as a sanction).

In this case, Defendants contend that Plaintiff was dilatory because he was required to disclose the photographs in January 2021 but did not do so until June 2022, and because Plaintiff's assertion of work product in April 2022 in response to a supplemental discovery request resulted in an additional two-month delay in production of the discovery. (Defs.' Br. at p. 9.) Plaintiff's failure to disclose the photographs and videos with his initial disclosures, or at the latest in March 2022 when he

utilized one of the photographs during the Castagno deposition, undoubtedly resulted in the delayed production of the documents. The Court recognizes that the parties have had numerous discovery disputes which have required court intervention and thereby delayed discovery. The Court, however, has never concluded that the positions taken by Plaintiff in prior discovery disputes were frivolous or that Plaintiff acted in a contumacious manner, and Plaintiff has timely complied with court orders that resolved these discovery issues. Thus, notwithstanding the delay caused by the present discovery issue, the Court does not find evidence to infer a history of dilatory conduct by Plaintiff sufficient to support dismissal of Plaintiff's complaint at this time.

The Court next addresses the *Poulis* factor as to whether the conduct of Plaintiff or his attorney was willful or in bad faith. *Poulis*, 747 F.2d at 868. In *Nat'l Hockey League*, 427 U.S. at 640-41, the Supreme Court affirmed a district court's finding of bad faith, where the district court had found that "[a]fter seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs, . . . the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents" and "exemplif[ies]

flagrant bad faith[.]" Alternatively, "'negligent behavior' or 'failure to move with . . . dispatch' — even if 'inexcusable' — will not suffice to establish willfulness or bad faith." *Chiarulli*, 2010 WL 1371944, at *3 (quoting *Adams*, 29 F.3d at 875).

Here, Defendants argue that because Plaintiff's counsel took the photographs and videos and knew that such discovery "differed markedly" from the photographs produced in discovery, counsel acted willfully or in bad faith. (Defs.' Br. at p. 9.) Plaintiff's counsel does not contend that the existence of the photographs created by counsel was unknown,[13] nor does counsel assert that the failure to identify the documents was due to an inadvertent error. Plaintiff's assertion of work product protection did not absolve counsel of the obligation pursuant to Federal Civil Rule 26(a) to disclose the photograph used during the Castagno deposition or provide a privilege log concerning the other photographs pursuant to Federal Civil Rule 26(b)(5). Plaintiff's counsel provides no explanation for the failure to produce a privilege log, for using at the Castagno deposition a photograph that was never disclosed in the initial disclosures or

---

[13] Counsel represented to the Court that he only recently became aware that he had videos of the incident scene and ladder. (Transcript of Telephonic Discovery Conference [D.I. 147], June 9, 2022, p. 23:6-19)(Plaintiff's counsel stated: "[A]fter our last call, we went through and looked at all of the -- what we had done at the -- the first time we were there, and . . . [w]hat we didn't realize was there were two MP4 files. They're videos, so we have two videos of the ladder, we'll produce that as well.").

in discovery, or for failing to advise defense counsel during the deposition that the photograph had not been previously disclosed in discovery, despite having advised defense counsel that other photographs presented to the witness had not been previously produced. Moreover, when Plaintiff's counsel presented Mr. Castagno with the photographs of the interior of the house taken during the joint inspection in January 2021 and the witness testified that the house looked "completely different" than it looked in August 2018, counsel did not immediately identify all of the photographs, which suggests a bad faith motive for failing to disclose the previously withheld photographs. The Court finds that counsel's failure to identify the photographs and videos in a privilege log, the subsequent utilization of one of the photographs at a deposition, and the failure to disclose the remaining photographs during or after the Castagno deposition when it became absolutely clear that the witness testified that the only interior photographs were markedly different from the withheld photographs, constitute a showing of bad faith that warrants sanctions. Thus, the fourth *Poulis* factor supports dismissal.

Before turning to the effectiveness of other sanctions, the Court considers the *Poulis* factor related to the meritoriousness of the claims and defenses. *Poulis*, 747 F.2d at 868. "In *Poulis*, [the Third Circuit] stated that '[a] claim, or defense, will be deemed meritorious when the allegations of the

34

pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense.'" *Curtis T. Bedwell*, 843 F.2d at 696 (quoting *Poulis*, 747 F.2d at 869-70). Here, the Court notes that Defendants did not seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), nor did they file a motion asserting that the complaint is frivolous pursuant to Federal Rule of Civil Procedure 11. The Third Circuit has declined to "require the district court to have a mini-trial before it can impose a default" and has held that "unless the pleading asserted a dispositive defense (or claim), the issue of meritoriousness would be neutral." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 922 (3d Cir. 1992), *abrogation on other grounds recognized by White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334 (3d Cir. 2023). Thus, the Court finds at this time that this *Poulis* factor is neutral in the evaluation of sanctions.

Finally, under *Poulis*, the Court must also consider the effectiveness of other, less drastic sanctions. *Poulis*, 747 F.2d at 868. "Dismissal must be a sanction of last, not first, resort." *Id.* at 869. Here, the Court finds that reopening discovery is a less drastic sanction that will alleviate the prejudice to Defendants. The Court, therefore, shall permit Defendants to re-depose Plaintiff and Mr. Castagno on the issues raised by the eighty-one photographs and three videos previously withheld on work product grounds. In addition, under Federal Rule of Civil

Procedure 37(c)(1), Plaintiff's counsel shall be required to pay all of Defendants' reasonable expenses, including reasonable attorneys' fees and costs, incurred in connection with these limited depositions.[14] "'[T]he imposition of sanctions' under Federal Rule of Civil Procedure 37 'is a matter within the discretion of the trial court.'" *Trowery*, 2015 WL 9587608, at *10 (quoting *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995)). "Discovery violations that require the parties to reopen or reexamine areas of discovery have been held to be prejudicial and sufficient to require sanctions." *Id.* (citing *Cody v. Phil's Towing Co.*, 247 F. Supp. 2d 688, 696 (W.D. Pa. 2002)). Moreover, assessment of attorney's fees as a less severe sanction than dismissal of a suit "is undoubtedly within a court's inherent power." *Chambers*, 501 U.S. at 45. As the Court finds that Defendants have been prejudiced by Plaintiff's counsel's conduct in connection with the late production of documents and that the actions of Plaintiff's counsel constitute

---

[14] There has been no showing that Plaintiff knew of the existence of the photographs or videos. As discussed above in connection with the personal responsibility *Poulis* factor and the bad faith *Poulis* factor, Plaintiff's counsel took the photographs and videos, the images were taken with Plaintiff's counsel's cell phone, and Plaintiff was not present during the site inspection to have knowledge that his attorney took the photographs and videos. The Third Circuit "has 'increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault.'" *Hildebrand*, 923 F.3d at 133 (quoting *Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 807 (3d Cir. 1986)).

a showing of bad faith, the Court finds that the imposition of the additional costs and fees associated with the re-depositions is an appropriate lesser sanction that will fairly compensate Defendants for the harm they suffered from the nondisclosure of the photographs and videos.

In conclusion, in evaluating the *Poulis* factors, the Court finds Defendants' request for dismissal of the complaint not appropriate as the *Poulis* factors on balance do not support dismissal of the case. However, for the reasons previously set forth in this Memorandum Opinion and Order, Defendants shall be permitted to re-depose Plaintiff and Mr. Castagno on the issues raised by the eighty-one photographs and three videos. Accordingly, Defendants' request to dismiss the complaint as a discovery sanction is denied, and alternative sanctions shall be imposed as set forth herein.

The Court next addresses Defendants' request to compel the production of the metadata associated with the pictures as well as the deposition of Plaintiff's counsel. Defendants seek the metadata and the deposition of Plaintiff's counsel for the same purpose: to understand the "order in which the photographs and videos were taken" and "what was done to manipulate the accident ladder and accident scene during the photo shoot." (Defs.' Br. at pp. 7, 12.) Defendants note that "in some photographs the ladder is upright, while in others it is laying down" and that "[i]n some

photographs the spreader bar is hanging, while in others it is balanced on a side rail." (Defs.' Reply Affirmation in Further Supp. of Mot. for Dismissal or Sanctions [D.I. 182], pp. 9-10.) Defendants assert that "[t]he order the photographs were taken help show how the scene looked when [Plaintiff's counsel] walked into the room." (*Id.*) The Court has reviewed the photographs and finds that the date and time of each picture constitute relevant discovery as defined by Federal Rule of Civil Procedure 26(b)(1), and the Court similarly finds that Plaintiff's counsel has relevant information relating to the claims in this litigation. Notably, the condition of the subject ladder is a critical issue in this product liability suit. Plaintiff has argued that the rivets attaching the spreader bars of the subject ladder to the side rails failed, causing the ladder to fall. (*See* Letter from Patrick D. MacAvoy, Esq. [D.I. 123], Apr. 4, 2022, p. 3.) As noted by Defendants, the previously withheld photographs depict the ladder in an upright position, as well as on its side, and in some photographs the spreader bars appear to be attached to or balanced on the side rails on all four sides, whereas in other photographs the spreader bars are detached on two sides. (*See, e.g.*, Giacopelli Cert., Ex. 7 [D.I. 174-11], pp. 1, 6, 11, 19.) The order in which the photographs were taken – as reflected in the date and time stamp of each picture – may demonstrate whether the ladder was initially found with the spreader bars attached or detached and

how the spreader bars were manipulated, if at all, during the course of the inspection. As to Defendants' request to depose Plaintiff's counsel, the Court finds that Plaintiff's counsel will have information about the manner in which the ladder was found, the manner in which the ladder was manipulated during the inspection, and the manner in which the spreader bars were attached or removed during the inspection, if at all. Because the condition of the ladder at the time of Plaintiff's fall and the alleged failure of the spreader bar rivets are important factual issues in this case, the Court finds the information sought by Defendants to be relevant discovery.

Given the relevance of the date and time data for each of the photographs and videos, the Court will require Plaintiff to produce all of the metadata for each photograph and video. In addition, the Court will permit Defendants to serve written discovery requests with respect to the July 15, 2020 site inspection. The Court will not, however, require Plaintiff's counsel's deposition at this time, as the factual information requested by Defendants may be obtained through other means. *See Stepanski v. Sun Microsystems, Inc.*, No. 10-2700, 2011 WL 8990579, at *18 (D.N.J. Dec. 9, 2011)("'[D]epositions of opposing counsel are permissible only if: (1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information sought is crucial to the

preparation of the case[.]'") (quoting *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385 (E.D. Pa. 2006)), *report and recommendation adopted*, No. 10-2700, 2012 WL 3945911 (D.N.J. Sept. 10, 2012). The Court notes that Plaintiff's counsel represented that counsel was accompanied by personnel from Forensic Storage & Technologies when the subject ladder was removed from the premises on July 15, 2020. (Letter from Patrick D. MacAvoy, Esq. [D.I. 141], June 3, 2022, p. 1.) The information sought by Defendants may be gathered from the metadata, the written discovery to Plaintiff's counsel, and a witness other than Plaintiff's counsel, and the Court shall thus permit Defendants to depose the person who accompanied counsel on July 15, 2020 but shall deny the request for the deposition of Plaintiff's counsel.

    The Court also considers Defendants' request for monetary sanctions, including the costs associated with filing this motion. The Court has awarded the attorneys' fees and costs that are incurred in re-deposing Plaintiff and Mr. Castagno but will not grant an award of attorneys' fees and costs incurred in filing this motion at this time, or in deposing the fact witness from the forensic storage facility.[15] The Court notes in particular

---

[15] The Court will not require Plaintiff's counsel to pay the costs associated with the deposition of a person from the forensic storage facility because Defendants would have incurred the costs of this deposition even if the photographs and videos had been produced earlier in the litigation.

that before the motion was filed, Plaintiff's counsel agreed to much of the relief sought in this motion, including producing Plaintiff and Mr. Castagno for another deposition, paying half of the court reporter's costs for such depositions, and answering written interrogatories. (*See* Pl.'s Opp. Br. at p. 3.) Despite these alternatives, Defendants chose to press for dismissal as a sanction even though the circumstances of this case do not rise to a level warranting the ultimate sanction of dismissal under Third Circuit precedent. *See Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 83 (3d Cir. 2012)(noting that a "typical" scenario in which dismissal is appropriate sanction would be when "the non-responsible party's case is severely impaired because it lacked the information that was not produced" and would not include cases in which alternative sanctions "were sufficient to address" prejudice to the non-responsible party). Accordingly, the Court will not require Plaintiff to pay the costs incurred by Defendants in filing the motion to dismiss. Defendants' request in this regard is thus denied.

CONSEQUENTLY, for the reasons set forth herein and for good cause shown:

IT IS on this **20th** day of **April 2023,**

**ORDERED** that Defendants' motion for sanctions [D.I. 174] shall be, and is hereby, **DENIED** to the extent Defendants seek dismissal of Plaintiff's complaint, **GRANTED** to the extent

Defendants seek alternative sanctions, and **<u>DENIED</u>** to the extent Defendants seek an award of the costs and attorneys' fees incurred in filing the instant motion; and it is further

**ORDERED** that the Court shall require Plaintiff's counsel to pay the reasonable attorneys' fees and costs for the re-deposition of Plaintiff and William Castagno limited to issues raised by the previously withheld eighty-one photographs and three videos; and it is further

**ORDERED** that Plaintiff shall make himself available for a second deposition **by no later than May 30, 2023** limited to issues raised by the previously withheld eighty-one photographs and three videos; and it is further

**ORDERED** that Defendants are granted leave to take a second deposition of William Castagno **by no later than May 30, 2023** limited to issues raised by the previously withheld eighty-one photographs and three videos;

**ORDERED** that Plaintiff shall produce to Defendants **within fourteen (14) days of this Order** the metadata for each of the previously withheld eighty-one photographs and three videos; and it is further

**ORDERED** that **within twenty (20) days of this Order** Defendants may serve written discovery on Plaintiff's counsel concerning the site inspection on July 15, 2020; and it is further

**ORDERED** that **within twenty (20) days of this Order** Defendants may serve a subpoena for the deposition of the person from Forensic Storage & Technologies who accompanied counsel to the inspection of the subject ladder on July 15, 2020; and it is further

**ORDERED** that Defendants shall, **within twenty (20) days** of the depositions of Plaintiff and Mr. Castagno, file with the Court an affidavit of reasonable attorneys' fees and costs incurred in connection with the second depositions of these witnesses. Plaintiff may, **within ten (10) days** of the filing of such affidavit, submit a letter responding to Defendants' affidavit of fees and costs.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Noel L. Hillman